UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**DAVID P. HENRY,**

        **Plaintiff,**

**-vs-**                                                Case No. 6:07-cv-01128-Orl-DAB

**PIZZA HUT OF AMERICA, INC.,**

        **Defendant.**

_____

# ORDER

This case comes before the Court on the following:

1. Defendant's Motion to Compel Arbitration and Stay the District Court Proceedings (Doc. No. 19, filed Aug. 16, 2007);

2. Plaintiff's Response to Defendant's Motion to Compel Arbitration and Stay District Court Proceedings (Doc. No. 20, filed Aug. 27, 2007);

3. Defendant's Motion for Leave to File a Reply to Plaintiff's Response to Defendant's Motion to Compel Arbitration (Doc. No. 21, filed Aug. 29, 2007); and

4. Plaintiff's Response to Defendant's Motion for Leave to File a Reply to Plaintiff's Response to Defendant's Motion to Compel Arbitration (Doc. No. 22, filed Sept. 6, 2006).

**Background**

Plaintiff David P. Henry sued Defendant Pizza Hut of America, Inc. ("Pizza Hut") under 42 U.S.C. section 1981 ("Section 1981") for allegedly firing him because of his race. (Doc. No. 2, filed

July 5, 2007, ¶ 7).  Pizza Hut removed the case to this Court and filed a Motion to Compel Arbitration and Stay District Court Proceedings.  (Doc. No. 1, filed July 5, 2007; Doc. No. 19).

In its motion, Pizza Hut argues that Henry's Section 1981 claim falls within the scope of the arbitration agreement.  (Doc. No. 19, p. 3).  Pizza Hut attached as an exhibit Henry's employment application which included the following clause:

> Agreement to Arbitrate.  Because of the delay and expense of the court systems, Pizza Hut and I agree to use confidential binding arbitration, instead of going to court, for any claims that arise between me and Pizza Hut, its related companies, and/or their current or former employees.  Without limitation, such claims would include any concerning compensation, employment (including, but not limited to, any claims concerning sexual harassment or discrimination), or termination of employment.  Before arbitration, I agree (i) first, to present any such claims in full written detail to Pizza Hut; (ii) next, to complete any Pizza Hut internal review process; and (iii) finally, to complete any external administrative review (such as with the Equal Employment Opportunity Commission).  In any arbitration, the then prevailing employment dispute resolution rules of the American Arbitration Association will apply, except that Pizza Hut will pay the arbitrator's fees, and Pizza Hut will pay that portion of the arbitration filing fee in excess of the similar court filing fee had I gone to court.

(Doc. No. 19-2, p. 3).  The arbitration clause appeared on the second page of Henry's two-page employment application.  (*Id.*)  The clause used a font that was slightly smaller than the font used in the various questions on the application.  (*Id.*)  Henry signed and dated the application directly below the arbitration clause.  (*Id.*)

Henry responded to Pizza Hut's motion with several arguments.  (Doc. No. 20, filed Aug. 27, 2007).  Henry first argues that the parties executed a "materially different" agreement when he began work.  (*Id.* at p. 1).  That agreement appears on a form titled "Acknowledgment of Receipt and Understanding."  (Doc. No. 20-3, filed Aug. 27, 2007, p. 4).  The form required Henry to acknowledge that he received a copy of the orientation handbook and Pizza Hut's sexual harassment

policy. (*Id.*) The arbitration agreement is the third and final paragraph on the form, and it uses the same size font as the other text on the page. (*Id.*)

The second arbitration clause contains two textual differences from the first clause. (*Id.*) The second sentence omits the words "Without limitation" and begins with "Such." (*Id.*; Doc. No. 19-2, p. 3)  In addition, the second arbitration clause omits language requiring Pizza Hut to pay arbitration fees and any increase in filing fees associated with arbitration. (Doc. No. 20-3, p. 4). Instead, the last sentence of the clause reads: "In any arbitration, the then prevailing employment dispute resolution rules of the American Arbitration Association (and, to the extent not inconsistent, the then prevailing rules of the Federal Arbitration Act) will apply." (*Id.*)

Henry also argues that the agreement is not covered by the Federal Arbitration Act ("FAA") because he did not engage in instate commerce by delivering pizza to a limited area of Brevard County, Florida. (Doc. No. 20, p. 2). Finally, Henry argues that the arbitration agreement is unconscionable and cannot be enforced. (*Id.* at pp. 3-8). In support, Henry submitted an affidavit stating that he was rushed through the paperwork and did not have time to review the documents that he signed. (Doc. No. 20-2, filed Aug. 27, 2007).

**Standard of Review**

In determining whether the parties agreed to arbitrate a dispute, the district court must examine the arbitration agreement and other underlying relevant facts. *See* 9 U.S.C. § 4 (2006); *Wheat, First Sec., Inc. v. Green*, 993 F.2d 814, 817 (11th Cir. 1993). The validity of an arbitration agreement is generally governed by the FAA, 9 U.S.C. sections 1-16 (2006), which "embodies a

liberal federal policy favoring arbitration agreements."[1] *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005)(internal quotations omitted). Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract." *Id.* (quoting 9 U.S.C. § 2 (2006))(internal quotations omitted). Although federal law governs most matters related to arbitration, "state law generally governs whether an enforceable contract or agreement to arbitrate exists." *Id.* at 1368 (citing *Perry v. Thomas*, 482 U.S. 483, 492 n. 9 (1987)). Nevertheless, the Court must apply state law in the context of the FAA's liberal enforcement policy. *Id.*

**Analysis**

**I.     Effect of Two Different Agreements**

Henry contends that the arbitration clause should not be enforced because Pizza Hut had Henry sign two different arbitration clauses, one clause when he applied for a job and a second when he was hired. (Doc. No. 20, p. 1). Henry argues that the agreements are "substantially different" but does not identify the alleged differences. (*Id.*) Rather, Henry argues that Pizza Hut's motion should be "stricken and/or denied" because Pizza Hut has not been candid with the Court. (*Id.*)

Henry's argument is not well taken. The agreements are not "substantially different." In fact, they are substantially similar. (*Compare* Doc. No. 20-3, p. 4, *with* Doc. No. 19-2, p. 3). The only material difference is in the last sentence of each clause. Pizza Hut seeks to enforce the

---

[1] Henry does not argue that his claims fall outside the scope of the arbitration agreement, and therefore his arguments only concern the validity of the arbitration agreements before the Court. *See*, *e.g.*, *Patriot Mfg., Inc. v. Dixon.*, 399 F. Supp. 2d 1298, 1301 (S.D. Ala. 2005) ("In determining whether the parties agreed to arbitrate a particular dispute, courts consider: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute in question falls within the scope of that agreement.").

arbitration agreement contained in Henry's employment application which provides that Pizza Hut will "pay the arbitrator's fees, and . . . that portion of the arbitration filing fee in excess of the similar court filing fee had [the applicant] gone to court." (Doc. No. 19-2, p. 3.)  In the agreement Henry signed upon being hired, Pizza Hut does not promise to pay the arbitrators fees, and the agreement instead contains language indicating that the rules of the FAA will apply to the extent they are consistent with the rules of the American Arbitration Association ("AAA").  (Doc. No. 20-3, p. 4).

These two clauses do not differ in a way that will significantly affect this Court's analysis. In fact, the agreement Pizza Hut relies on appears to be more favorable to Henry, because it expressly requires Pizza Hut to absorb some of the arbitration costs. (Doc. No. 19-2, p. 3). Based on the evidence presented, there is no reason to believe that Pizza Hut intended to deceive the Court or acted in a manner that warrants sanctions for bad-faith behavior. *See* Fed. R. Civ. P. 11 (2006).

However, because the parties have submitted two arbitration clauses for consideration, the Court must identify which terms control the parties' agreement. *See Canal Lumber Co. v. Florida Naval Stores & Mfg. Co.*, 92 So. 279, 281 (Fla. 1922) (Interpretation of multiple contracts requires the court to consider the whole agreement, not "disjointed parts."). The second arbitration clause does not contain language that demonstrates an intent to supersede the first clause. (*See* Doc. No. 20-3, p. 4). Thus, the two clauses should be read together, to the extent they are consistent. Restatement (Second) of Contracts § 279 (1981) (Complete "substitution" by a later agreement only occurs where the parties intended for a new agreement to entirely replace an earlier agreement.); *In re Estate of Shore*, 605 So. 2d 951, 951-52 (Fla. 4th DCA 1992). Pizza Hut does not argue that the omission in the second arbitration clause was intended to abrogate its duty to partially pay the costs of arbitration. (Doc. No. 21, p.1 n.1). Moreover, the additional language in the second clause,

requiring FAA rules to apply to the extent they are consistent with AAA rules, is not inconsistent with the first clause. (*See* Ex. A, Doc. No. 20). Thus, the Court will read the two clauses together for purposes of assessing Pizza Hut's motion to compel arbitration and stay proceedings. *See Sammons v. Sonic-North Cadillac, Inc.*, 6:07-cv-277, 2007 WL 2298032, *1 n.1 (M.D. Fla. Aug. 7, 2007)(considering two substantially similar arbitration clauses together in assessing a motion to compel arbitration).

## II.   Scope of the FAA

Henry next argues that the FAA does not apply because Henry's job did not involve interstate commerce. (Doc. No. 20, p. 2). The FAA applies to agreements "evidencing a transaction involving commerce."[2] 9 U.S.C. § 2. Courts must determine on a case-by-case basis whether a particular transaction involved interstate commerce. *Jenkins v. First Am. Case Advance of Ga., LLC*, 400 F.3d 868, 874-75, 875 n.6 (11th Cir. 2005).

Henry argues that his job did not involve interstate commerce because he delivered pizza to a small, defined area of Brevard County, Florida. (Doc. 20, p. 2.). Henry's argument is contradicted by nearly seventy years of Supreme Court precedent. *See Circuit City v. Adams*, 532 U.S. 105, 113 (2001) ("Commerce," for purposes of the FAA, includes employment contracts); *Katzenbach v. McClung*, 379 U.S. 294, 296-305 (1964) (Barbecue restaurant in an isolated location participated in interstate commerce because a substantial amount of its food supplies had moved in interstate

---

[2]   The Supreme Court has determined that Congress fully utilized its commerce power when it enacted the FAA. *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995). Thus, the FAA reaches any transaction that Congress could constitutionally regulate, except those transactions that the Act excludes. *Id.*; 9 U.S.C. § 1 (2006) (excluding from coverage employment contracts of seaman and railroad employees).

commerce); *Wickard v. Filburn*, 317 U.S. 111, 128 (1942) (Single wheat farmer participated in interstate commerce because his contribution to the market, taken together with many others similarly situated, "was far from trivial."). Henry acknowledges, for purposes of his unconscionability argument, that Pizza Hut is a "giant multinational corporation" and part of the "Yum! Brands" parent corporation, which operates over 34,000 restaurants in more than 100 countries. (Doc. No. 20, p. 4; Doc. No. 20-3, filed Aug. 27, 2007, p. 1). While Henry's pizza deliveries may have had a minimal impact on interstate commerce, the aggregate impact of all his similarly-situated pizza delivering colleagues is "far from trivial." *See Filburn,* 317 U.S. at 128. Moreover, Henry's employer was a large multinational corporation that, itself, engaged in interstate commerce. *See Katzenbach*, 379 U.S. at 296-305. Thus, the arbitration agreement is subject to the FAA.

Henry also argues that the agreement is not covered by the FAA "because the American Arbitration Assocation (AAA) rules Pizza Hut purports to adopt once <u>in the actual arbitration</u> are stated in the 'agreement' to supersede FAA; i.e., recognizing the Federal Arbitration Act 'to the extent not inconsistent' with any AAA rules that may exist in the future." (Doc. No. 20, p. 2). Henry appears to argue that the agreement partially opts out of the FAA by stating that AAA rules may supersede FAA rules where inconsistent, and therefore the parties intended for the agreement to be unenforceable under the FAA. Henry's interpretation of the agreement is illogical. Had the parties intended for the language regarding the FAA to operate as Henry argues, the clause would be rendered useless because neither party could insist on its enforcement in court. *See Philip Morris Inc. v. French*, 897 So. 2d 480, 488 (Fla.3d DCA 2004) (warning that contracts should not be interpreted to achieve absurd results).

**III.    Unconscionability**

Finally, Henry argues that the arbitration agreement is unconscionable. Under Florida law, Henry has the burden of establishing that the arbitration provision is both "procedurally" and "substantively" unconscionable. *Murphy v. Courtesy Ford*, LLC, 944 So. 2d 1131, 1134 (Fla. 3d DCA 2006). Procedural unconscionability concerns the manner in which a contract was made and turns on the "parties and their ability to understand the relevant terms." *U.S. EEOC v. Taco Bell of Am., Inc.*, 8:06-cv-1792, 2007 WL 809660, *1 (M.D. Fla. Mar. 15, 2007). Specifically, the court determines whether the parties had a realistic opportunity to bargain, whether the terms were presented on a "take-it-or leave-it" basis, and whether each party had a reasonable opportunity to understand the terms. *Id.* (citing *Murphy*, 944 So.2d at 1134).

Substantive unconscionability turns on the agreement itself, considering whether the disputed terms "limit available remedies, exclude punitive damages, prevent equitable relief, impose substantial costs, or lack mutuality of obligation with respect to the arbitration of disputes." *Id.* An agreement will only be found substantively unconscionable if the terms are "so outrageously unfair as to shock the judicial conscience." *Id.* (quoting *Bland ex. rel. Coker v. Health Care and Retirement Corp. of Am.*, 927 So. 2d 252, 256 (Fla. 2d DCA 2006)).

Henry argues that the agreement is procedurally unconscionable because it was a contract of adhesion and Pizza Hut, as a large multinational corporation, possessed much greater bargaining power. (Doc. No. 20, pp. 4-6). Henry further argues that he did not actually read the agreement because he was not given a chance to review it. (*Id.*; Doc. No. 20-2, ¶¶ 2-3). Pizza Hut disagrees and submitted a declaration of the store manager stating that Henry had an opportunity to read the agreement and ask questions. (Doc. No. 19-2, p. 1).

Henry contends that the agreement itself was substantively unconscionable because the agreement requires "confidential" arbitration and supposedly does not allow Henry to hire counsel or present witnesses.  (Doc. No. 20, p. 6.)  Furthermore, Henry argues that the agreement lacked consideration, failed to apprise him that he was waiving his right to a jury trial, and could conceivably require him to pay "for all or part of the arbitration."  (*Id.* at p. 7).  In addition, Henry asserts that the agreement lacks mutuality because Pizza Hut is not expressly required to respond to Henry's initial complaint, and Pizza hut failed to provide Henry with a copy of the arbitration rules.  (Doc. No. 2, p. 8).    Finally, Henry argues that arbitration is inherently biased in favor of large corporations like Pizza Hut, because "arbitrators would lose much of their repeat business" if they did not decide in favor of the corporation.  (*Id.* at 8.)

Henry's arguments do not establish that the arbitration agreement is unconscionable.  To prevail, Henry must demonstrate both "procedural" and "substantive" unconscionability. *Murphy*, 944 So. 2d at 1134.  Even if all of Henry's factual allegations regarding procedural unconscionability are presumed to be true, Henry has failed to show that the agreement was substantively unconscionable.

First, Henry misinterprets the word "confidential."  In both arbitration clauses, "confidential" modifies the word "arbitration."  (Doc. No. 20-3, p. 4; Doc. No. 19-2, p. 3).  The most reasonable construction of the term "confidential binding arbitration" is that the proceedings will be confidential and private, rather than part of a public record as would occur in court. *See*, *e.g., Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1369, 1378-79 (construing an arbitration clause that required confidentiality).  Nothing in the agreement, the FAA, or the AAA rules can be reasonably interpreted to prevent Henry from seeking legal representation or contacting witnesses.  *See*

American Arbitration Association, Employment Arbitration Rules and Mediation Procedures (2006), http://www.adr.org/sp.asp?id=32904; 9 U.S.C. §§ 1-16. *Compare Eastern Assoc. Coal Corp. v. Local 1503, United*, 993 F.2d 1536, *5, n.2 (4th Cir. 1993) (analyzing a collective bargaining agreement that expressly excluded attorneys from arbitration proceedings). Moreover, Henry's interpretation is contradicted by section 7 of the FAA which empowers arbitrators to summon witnesses in the same manner as a federal court. 9 U.S.C. § 7 (2006).

Henry's argument that the agreement lacked consideration is unsupported by the facts. When Henry signed the employment application, Pizza Hut considered him for employment. (*See* Doc. No. 19-2, p. 2-3). When Henry signed the second arbitration clause, Pizza Hut hired him as an employee. (*See* Doc. No. 20-3, p. 4). Both of these acts constitute consideration under modern contracts law. Restatement (Second) of Contracts § 71 (1981); *Cintas Corp No. 2 v. Schwailer*, 901 So. 2d 307, 309 (Fla. 1st DCA 2005).

Likewise, Henry's argument that arbitration agreements must contain an express waiver of a jury trial is unsupported by the law. The loss of the right to jury trial is a "fairly obvious consequence of an agreement to arbitrate." *Caley*, 428 F.3d at 1373 (11th Cir. 2005)(internal quotations and citations omitted). No express waiver of a jury trial is required. *See id.*

Further, Henry offers no factual support for his contention that he will be required to bear all or part of the arbitration costs. The arbitration agreement does not shift costs to the losing party. (Doc. No. 20-3, p. 4; Doc. No. 19-2, p. 3). Moreover, Pizza Hut is required to pay the arbitrator's fees and any filing fee in excess of a court's filing fee. (Doc. No. 20-3, p. 4; Doc. No. 19-2, p. 3).

While Henry may be responsible for his own litigation expenses, he might also bear these costs in federal court.[3]

Henry further argues that the agreement does not mutually bind both parties. In *Taco Bell*, the court examined an arbitration clause that is literally identical to the clause contained in Henry's employment application. *Compare* (Doc. No. 15-2 at p. 1), *with U.S. EEOC v. Taco Bell of Am., Inc.*, 8:06-cv-1792, 2007 WL 809660, *1 (M.D. Fla. Mar. 15, 2007). The court found that both parties were mutually bound to arbitrate. *Id.* Henry contends that concept of mutuality further requires Pizza Hut to expressly promise to provide a written response to employee complaints and also to provide all employees with copies of the arbitration rules before signing the arbitration agreement. (Doc. No. 2, p. 8). This argument stretches the concept of mutuality beyond the current case law, and Henry has not offered any legal authority in support of his position. *See Taco Bell*, 2007 WL 809660 at *3.

Finally, Henry's argument that arbitration is inherently biased in favor of large corporations is without merit. Rather than addressing the validity of the agreement before this Court, Henry is attacking the concept of arbitration. The validity of Henry's argument has already been addressed by Congress, which saw fit to establish a "liberal federal policy favoring arbitration agreements." *Caley*, 428 F.3d at 1367. Significantly, the Supreme Court has declined to indulge arguments that arbitral panels are inherently biased. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30-31

---

[3] If Henry prevailed in this Court, he could be eligible to receive an award of attorney's fees. 42 U.S.C. § 1988 (2006). There is no provision in the arbitration clause that prevents Henry from receiving attorneys' fees under this statute if Henry wins before an arbitration panel. (*See* Doc. No. 20-3, p. 4; Doc. No. 19-2, p. 3).

(1991). Moreover, if Henry loses before the arbitration panel and evidence develops that bias played a role, Henry is free to move this Court to vacate the judgment under 9 U.S.C. section 10.

Henry's failure to establish that the agreement is substantively unconscionable largely forecloses his unconscionability argument. *See Taco Bell*, 2007 WL 809660 at *3. However, some Florida cases have utilized a balancing test whereby a great degree of substantive unconscionability, coupled with a quantum of procedural unconscionability may render an agreement invalid. *Id.* (citing *Orkin Extermination Co., Inc. v. Francis D. Petch*, 872 So. 2d 259, 265 (Fla. 2d DCA 2004). Conceivably, the same result could occur if a great degree of procedural unconscionability was coupled with a quantum of substantive unconscionability. Thus, the Court will evaluate the facts to determine whether the agreement was procedurally unconscionable.

Some evidence of procedural unconscionability exists. As Henry repeatedly points out, Pizza Hut is a large corporation with greatly superior bargaining power. (Doc. No. 20, p. 5). Such a disparity in bargaining power militates toward unconscionability. *Petsch*, 872 So. 2d at 265. On the other hand, Henry has not alleged that he lacked alternatives to working at Pizza Hut. In fact, Henry's employment application states that he was employed by Walmart at the time he accepted a position with Pizza Hut. (Doc. 19-2, p. 2). Pizza Hut's agreement may have been on "take or it leave it" terms, but Henry was free, in this case, to "leave it." *See Gilmer*, 500 U.S. at 32 (finding that "mere inequality in bargaining power," absent "fraud or overwhelming economic power," was insufficient to invalidate an employment contract's arbitration clause).

Henry also contends that Pizza Hut's manager rushed him the through his paperwork without giving him an opportunity to read it. (Doc. No. 20-2, ¶ 2). However, both arbitration clauses are relatively short, each only four sentences long. (Doc. No. 20-3, p. 4; Doc. No. 19-2, p. 3).

Furthermore, both clauses are contained in documents of two or less pages with Henry's signature directly below each clause. (Doc. No. 20-3, p. 4; Doc. No. 19-2, p. 3). And, importantly, both documents asked Henry to read the clause and sign below. (Doc. No. 20-3, p. 4; Doc. No. 19-2, p. 3). Even if Henry was rushed, he should have had been able to read the paragraphs directly above his own signatures. *Compare Palm Beach Motor Cars Ltd., Inc. v. Jeffries*, 885 So. 2d 990, 991-92 (Fla. 4th DCA 2004) (invalidating an arbitration clause that appeared on the back page of a contract, was not initialed by the customer despite a space for the customer's initials, and was not brought to the attention of customers). Henry's mere allegation that he was rushed does not render the agreement procedurally unconscionable.

Accordingly, Henry has not made a strong showing of procedural unconscionability. To the degree any evidence exists that the agreement was procedurally unconscionable, it is outweighed by Henry's failure to establish substantive unconscionability. *See Taco Bell*, 2007 WL 809660 at *3. As a result, Henry has not met his burden to show that the arbitration agreement is unenforceable.

**Conclusion**

Based on the foregoing, the Court **GRANTS** Defendant's Motion to Compel Arbitration and Stay the District Court Proceedings. (Doc. No. 19). The Court **STAYS** the instant case and **ORDERS** the parties within fifteen (15) days from the date of this Order to submit Plaintiff's claim to arbitration pursuant to the arbitration agreements contained in Plaintiff's employment application and "Acknowledgment of Receipt and Understanding." (Doc. No. 20-3, p. 4; Doc. No. 19-2, p. 3). The Court **DENIES** as moot Defendant's Motion for Leave to File a Reply to Plaintiff's Response to Defendant's Motion to Compel Arbitration. (Doc. No. 21, filed Aug. 29, 2007).

**DONE** and **ORDERED** in Chambers in Orlando, Florida on September 27, 2007.

_____
PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record
Unrepresented Party